UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIUS M. LEWIS, on his own behalf and as Special Administrator of the Estate of Sherry Lewis, <br><br>　　　　　　　　　Plaintiffs, <br><br>　　v. <br><br>ZEBULUN J. PFEIFFER and COUNTY OF KANKAKEE, <br><br>　　　　　　　　　Defendants. | 04-2116 |

ORDER

　　　On June 28, 2002, while on duty in a marked Kankakee County Sheriff's Department squad car, Kankakee County Deputy Sheriff's Zebulun Pfeiffer ("Pfeiffer") was asked to respond to a call about a domestic battery.  Pfeiffer drove westbound on Route 17 at a high rate of speed with his emergency lights activated.  The plaintiff, Julius Lewis ("Lewis") states that Pfeiffer did not activate his siren, an assertion disputed by Pfeiffer.  When Pfeiffer was about one quarter mile east of the intersection of Route 17 and County Road 5000W, he pulled into the eastbound lane to pass westbound traffic.  Sherry Lewis ("Mrs. Lewis"), the plaintiff's wife, was traveling westbound ahead of the squad car. Pfeiffer passed a pickup truck, remained in the eastbound lane and intended to pass Mrs. Lewis's car.  As he approached the side of Mrs. Lewis's car, Mrs. Lewis attempted to turn left into a grocery store parking lot.  Pfeiffer's car struck the driver's side door of Mrs. Lewis's car.  Mrs. Lewis was ejected from the car and sustained fatal injuries from the accident.

　　　Lewis has filed this action against Pfeiffer and the County of Kankakee ("the County") pursuant to 42 U.S.C. § 1983.  The defendants have filed a motion for summary judgment, arguing that Pfeiffer and the County cannot be held liable because Pfeiffer's conduct did not shock the conscience nor was it done with deliberate indifference to the safety of others.  Lewis has filed a memorandum in opposition to the motion for summary judgment.  For the following reasons, the motion for summary judgment [#18] is granted.

ANALYSIS

　　　Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is proper when "a party . . . fails to make a showing

1

sufficient to establish the existence of an element essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir. 1988). Once the movant has done so, the party opposing the motion bears the burden to respond, not simply by resting on the pleadings, but by affirmatively demonstrating that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-324. In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the non-movant] does not [meet his burden], summary judgment, if appropriate, shall be entered against [the non-movant]." *See* Fed. R. Civ. P. 56(e).

### I. Deliberate action

In order to prevail at trial, Lewis must show that "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon him by a person or persons acting under color of state law." *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (*citing Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

The defendants argue that Pfeiffer's conduct did not rise to the level of a Fourteenth Amendment violation because the conduct did not "shock the conscience" nor did it constitute deliberate indifference to the plaintiff's rights. *See Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) (noting three distinct levels of fault: "negligence . . . , deliberate indifference, and conscience-shocking"). The Seventh Circuit cautioned against "reading those classifications too rigidly," noting that deliberate indifference is "merely the manifestation in certain situations of a more general inquiry, which is whether government conduct at issue 'shocks the conscience.'" *Bublitz*, 327 F.3d at 490. Negligence on the part of a police officer is insufficient to establish a constitutional violation. *Bublitz*, 327 F.3d at 491.

> It is generally only *deliberate* action intended to harm another that is the type of conduct targeted by the Fourteenth Amendment: "[C]onduct *intended* to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (*citing Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (emphasis added). In fact, in applying the rule from *Lewis*, we have held that, "The *sine qua non* of liability in cases analogous to high-speed chases, therefore, is a purpose to cause harm." *Schaefer v. Goch*, 153 F.3d 793, 798 (7th Cir. 1998) (quotation omitted).

*Bublitz v. Cottey*, 327 F.3d at 491.

The parties' main disagreement centers around the circumstances of the call to

2

which Pfeiffer was responding at the time of the accident.  The plaintiff argues that Pfeiffer was responding to a routine police call for which he did not need to drive at a high rate of speed.  Moreover, the plaintiff states that while Pfeiffer activated his emergency lights, he did not activate his siren.  The plaintiff contends that Pfeiffer's conduct was highly reckless, indifferent to the danger he created for the public at large, and shocking to the conscience.  The defendants argue that Pfeiffer was responding to a domestic battery and had properly activated his emergency lights and siren.

Lewis contends that the domestic battery call was not an emergency, and in view of that fact, Pfeiffer chose to drive his vehicle in an extraordinarily shocking manner.  To support his assertion, Lewis submits a transcript of the 911 dispatcher's calls.  At 8:37 p.m., the 911 dispatcher received a call from a woman who stated that her brother had pushed her boyfriend and tried to start a fight.  The caller further stated that her brother had left the house; the 911 dispatcher obtained a description of the brother's vehicle, asked which way he'd headed, and told the caller that she would send an officer to the home.  The dispatcher told the caller to phone 911 again if her brother returned to the home.  The call ended, and a short time later, the dispatcher called the woman to ask the boyfriend's name.

Then the dispatcher made another call -- the only call to Pfeiffer:

Operator: Hey there, I got a battery that just occurred at 3471 N. Ten Thousand West.

Officer: OK.

Operator: You out there?

Officer: Yep.

Operator: Oh, OK.  Well, he was . . . west, or, I'm sorry . . . northbound on Ten Thousand West so I don't know if he'll head . . .

Officer: Who is it?

Operator: Adrinne Migsdarffer.

Officer: Dealt with him a thousand times.

Operator: Yep.  White Dodge Ram extended cab.

Officer: OK.

Operator: OK?

3

Officer: Ten Thousand West and what was the other one?

Operator: 3471.

Officer: OK.

Operator: Thanks a lot, hun.

Officer: All right.

Operator: Bye.

Lewis argues at length that "a reasonable jury could conclude that under the circumstances of this case [Pfeiffer] was deliberately indifferent to the danger he was creating for the citizenry and that his conduct shocks the conscience." The court disagrees. Pfeiffer knew that a battery had been committed by an individual well known to the police, and that the offender had left the scene of the battery. The undisputed evidence shows that Pfeiffer was not aware of the severity of the battery.[1] When deposed, Pfeiffer stated that when he responded to the call, he was the only officer assigned to that area of the county, he was approximately fourteen miles away from the scene of the battery, and he considered the possibility that someone might need medical attention. Consequently, he responded to what he perceived to be an emergency situation. The plaintiff has not come forward with any evidence to show that, in view of Pfeiffer's knowledge at the time of the accident, there was no need to treat the situation as an emergency.

The plaintiff does not dispute that Pfeiffer had activated his emergency lights, but he claims that Pfeiffer did not activate his siren. The plaintiff submits the transcript of the Coroner's inquest at which Joseph Berns testified. Mr. Berns drove the truck that was traveling behind Mrs. Lewis's car. Mr. Berns testified that he saw a car ahead in the distance, traveling toward them in the opposite lane. When he saw that car pull off to the side of the road, he thought something was going on. He looked to his side and rear view mirrors and his window and he saw Pfeiffer's squad car in the passing lane. Pfeiffer passed Berns and stayed in that lane to pass Mrs. Lewis's car, which was about 100 feet ahead of Mr. Berns. Pfeiffer had his lights flashing. Berns stated, "I did not hear a siren because I had my radio on and my windows rolled up. I had the air conditioning going. *I can't say about [a] siren . . .* It was not a reckless pass. . ." (Emphasis added.) In sum,

---

[1] Pfeiffer stated at his deposition that he believed or was told that the offender was still at the home. The transcript of the call shows this to be inaccurate, but whether the offender was still there does not change the analysis; Pfeiffer was unaware of the condition of the victim. Although the dispatcher might have concluded there was no serious injury, she did not share that information with Pfeiffer.

Mr. Berns cannot offer any testimony in regard to the siren.[2]

Lewis also submits a letter from the County's insurance company. Among other things, the insurer asked if anyone knew "who deactivated the audible siren on the police vehicle. Is it possible that the siren was damaged in the crash and thus deactivated by damage?" This, Lewis argues, shows that the siren was not operating at the time of the crash. Although it shows that the siren may have been deactivated *after* the crash, it does not show that it was deactivated prior to the crash.

Illinois State Police Trooper John Dittmer conducts accident reconstruction. At the Coroner's inquest, he testified that he was called to the scene of the Lewis accident and spoke to several people who responded to the accident, including the investigating officer. He stated that "the emergency lighting and siren and [the squad car] were operating properly[.]"

Officer Craig Long has worked for the Kankakee County Sheriff's Department since 1978. When deposed, he stated that police vehicles contain a number of electrical devices. After an accident, the risk of fire is reduced if the siren and other electrical devices are switched off. Long opined that emergency personnel responding to the scene of the Lewis accident had shut off the electrical equipment in the squad car to prevent further injury to people, equipment or property. He further stated that police officers often shut off the ignition when they arrive at the scene of an accident.

Officer Long was also questioned about ways "to deactivate" the siren. He stated that the obvious way was to manually turn it on and off through push buttons on the console. The siren could also be deactivated by cutting or disconnecting the battery connection to the console, as firemen sometimes do – a "very common practice," according to Long – or by depressing a master on/off switch inside the squad car, which shuts down all devices inside the car. Long stated that if the battery connection had been cut or the master switch turned off, all electrical equipment would have been deactivated, including the emergency lights. Long was not asked about other ways to activate or operate the siren.

Pfeiffer stated at his deposition that he had activated the lights and switched the siren to manual operation through the cruise control or horn on his steering wheel. He explained that when the siren is controlled this way, the sound lasts for about fifteen seconds and the officer can select one of several sound patterns and pitches in order to find a sound that will get a driver's attention. Pfeiffer explained that sometimes a driver might not hear a siren because the windows are rolled up and the radio is turned on. In such cases, the inattentive driver might well respond to another siren pitch or sound

---

[2] Mr. Berns also stated that Mrs. Lewis did not activate her left turn signal.

pattern, and the officer can switch to different siren sound when approaching an intersection or other hazard.  The sounds can be repeated or changed with a touch of the horn or the cruise control, and the siren automatically winds down if it is not reactivated through the horn or cruise control.[3]  The alternative to manual operation is the constant siren that is controlled by switches on the console, which requires the officer to divert his eyes from the road.

The undisputed facts show that Pfeiffer received a 911 dispatch to respond to a domestic battery.  He did not know if, or to what extent, the victim was injured.  He was fourteen miles away from the scene and treated the call as an emergency.  Pfeiffer was traveling at a high rate of speed with his lights activated.  He states his siren was also activated.  The only other witness to the accident states that he "can't say about a siren." The witness also opined that Pfeiffer's driving was not reckless.  The only question of fact is whether, *after* the accident, someone physically deactivated, disconnected or severed the connection to the siren; however, this is not a material fact because Pfeiffer's conduct after the accident is not at issue.  Considering the evidence, a jury could find that Pfeiffer's conduct did not even rise to the level of negligence.  It certainly does not rise to the level of deliberate indifference or shock the conscience such that Mrs. Lewis was deprived of her constitutional rights.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [#18] is granted.  This case is terminated.  The parties shall bear their own costs.

Entered this 18th day of October, 2005.

**Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[3]Pfeiffer stated, "Without someone actually pressing on the cruise control button or tapping on the horn, once it finishes its sequence it stops until one of the buttons is pushed again."  Pfeiffer testified that, after the accident, his lights were still operating but his siren had stopped because the sequence had wound down.